# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Dorsey & Whitney LLP, | Civ. No. 18-2493 (WMW/BRT) |
| Plaintiff, | |
| v. | **REPORT AND** |
| United States Postal Service, | **RECOMMENDATION** |
| Defendant. | |

Alex P. Hontos, Esq., and Caitlin L. D. Hull, Esq., Dorsey & Whitney LLP for Dorsey & Whitney LLP.

Andrew Tweeten, Esq., Assistant United States Attorney for United States Postal Service.

BECKY R. THORSON, United States District Judge

This matter is before the Court on cross-motions for summary judgment. (Doc. Nos. 30, 35.) The relatively narrow issue before the Court is whether the United States Postal Service ("USPS") is required to confirm or deny even the existence of documents responsive to Dorsey & Whitney's ("Dorsey") Freedom of Information Act ("FOIA") request. Whether the USPS is required to disclose any of the information contained in those documents, if any such documents even exist, is not an issue presented by the pending motions. The USPS has refused to confirm or deny the existence of any documents responsive to Dorsey's FOIA request by providing what is known as a "*Glomar*" response. "The name is derived from the facts of *Phillippi v. CIA*, in which this court addressed the CIA's refusal to confirm or deny whether it had documents relating to

Howard Hughes' ship, the Glomar Explorer, which had reputedly been used in an attempt to recover a lost Soviet submarine." *ACLU v. CIA*, 710 F.3d 422, 426 n.1 (D.C. Cir. 2013).

Both summary judgment motions were referred to the undersigned for a Report and Recommendation to the District Court. (*See* Doc. No. 22); 28 U.S.C. § 636(b)(1). This Court held a hearing on the motions on April 3, 2019. (Doc. No. 45.) For the reasons stated below, this Court recommends that Dorsey's motion be granted and the USPS's motion be denied.

**I.     Background**

On April 16, 2018, Dorsey submitted a FOIA request to the USPS, seeking information relating to Negotiated Service Agreements ("NSAs") with three entities: (1) Fujian Zongteng Network Technology Co., Limited (f/k/a Fuzhou Zongteng Technology Co., Limited); (2) Enumber, Inc.; and (3) US Elogistics Service Corporation. (Doc. No. 38, Declaration of Alex P. Hontos ("Hontos Decl.") ¶ 2, Ex. 1.)[1] The FOIA request also sought information "related to the criteria used by the [USPS] to award NSAs, including, but not limited to, any internal guidance, handbooks, or checklists related to the same." (*Id.*) NSAs are agreements by which private parties obtain USPS

---

[1] The request asked for "[a]ll documents and communications, inclusive of those in electronic form or format, or any other records in your possession or control, regardless of physical form or characteristics, related to any Negotiated Service Agreement ("NSA") between the United States Postal Service" and Fujian Zongteng Network Technology Co., Limited, Enumber, Inc., and US Elogistics Service Corporation including copies of "the NSA and any application or proposal materials submitted . . . to obtain the NSA." (Hontos Decl., Ex. 1.)

2

services at lower rates or more favorable terms than those otherwise available to the general public, with the stated goal of incentivizing private parties to use a higher volume of USPS services. (*Id.*, Exs. 7–8.)[2]

The USPS denied Dorsey's FOIA request by issuing a *Glomar* response, stating that it would "neither confirm nor deny whether [the requested] records exist." (*Id.*, Ex. 2.) The USPS stated as follows:

> [t]he records . . . relate to business relationships that the Postal Service may or may not have with selected business partners. The release of the existence of such a relationship as well as the material terms of any such agreement, should they exist, could harm the Postal Service's commercial interests in obtaining competitive rates with a variety of business partners in the future. As a result, the Postal Service can neither confirm nor deny whether the requested records exist.

(Doc. No. 33, Declaration of Dennis Nicoski ("First Nicoski Decl.") ¶ 6, Ex. B at 2.) The USPS cited FOIA Exemption 3 to justify its *Glomar* response and refused to conduct any search for the records requested or attempt to segregate portions of the requested documents. (*Id.*) A *Glomar* response is one that refuses to confirm or deny the existence

---

[2] The USPS advertises NSAs as "contractual agreement[s] between the [USPS] and an individual company that provide[] customized pricing incentives or other arrangement[s] justified by a shift in the company's mail operations," with the intention of helping "to meet the needs of specific customers for whom mail is an integral part of their business strategy." (Hontos Decl, Exs. 7–8.) In 2006, Congress explicitly authorized the USPS to negotiate NSAs by enacting the Postal Accountability and Enhancement Act. *See* 39 U.S.C. § 3622. Since that time, the USPS has entered into approximately 1,674 NSAs. (*Id.*, Ex. 10.) According to the Postal Regulatory Commission (the "PRC"), 289 NSAs were approved in 2018, and as of March 1, 72 have been approved in 2019. (*Id.*)

of documents responsive to a FOIA request. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 293 F. Supp. 3d 124, 127 (D.D.C. 2018).

Dorsey administratively appealed the denial, arguing that a *Glomar* response was inappropriate because Section 410(c)(2) of the Postal Reorganization Act of 1970 ("PRA") permits withholding only particular information, not entire documents or the mere fact of their existence. (Hontos Decl., Ex. 3.) The USPS denied the appeal, claiming that Dorsey's requests were "commercial in nature" and that "even acknowledging the existence" of such information would "disclose whether the [USPS] has NSAs with [the] named parties." (*Id.*, Ex. 4.) The USPS did not provide separate justification for withholding information in response to Dorsey's request for "the criteria used by the [USPS] to award NSAs." (*Id.*)

Dorsey filed this lawsuit on August 27, 2018, seeking disclosure of the documents Dorsey alleges were wrongfully withheld. (*See* Doc. No. 1, Compl.) On November 9, 2018, Dorsey filed a Motion to Compel a *Vaughn* Index.[3] (*See* Doc. No. 14.) This Court denied Dorsey's motion without prejudice on December 21, 2018, reasoning that "the Court must first address whether USPS's *Glomar* response should be upheld before it can order the production of a *Vaughn* index." (Doc. No. 21, 12/21/18 Order 3.) The Court also explained that it could not issue an order on the *Glomar* response because it presents a dispositive question outside of a magistrate judge's jurisdiction. (*Id.* at 3–4.) The Court

---

[3] "A *Vaughn* index is a common FOIA procedural device that lists the documents responsive to the request and explains why portions have been withheld." *Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 544 n.12 (5th Cir. 2002) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)).

4

stated that "[a]djudication of the *Glomar* response can be promptly presented to the Court for resolution," noting that "[a]ccording to the Scheduling Order in place, the USPS has already served Plaintiff with its' draft declarations in support of summary judgment." (*Id.* at 4.) On December 26, 2018, United States District Judge Wilhelmina M. Wright referred the anticipated *Glomar* motions to the undersigned. (Doc. No. 22.) The USPS filed its motion for summary judgment on February 28, 2019, and Dorsey filed its motion for summary judgment on March 11, 2019. (Doc. Nos. 30, 35.)

On February 11, 2019, the USPS issued a "supplemental response" to Dorsey's FOIA request. (Hontos Decl., Ex. 5.) In its supplemental response, the USPS withdrew its *Glomar* response with respect to the guidance materials requested by Dorsey. (*Id.*) The USPS did not produce any documents, stating that it was "unable to locate responsive documents." (*Id.*) Dorsey filed an administrative appeal on March 5, 2019. (*Id.*, Ex. 6.) On March 18, 2019, the USPS denied Dorsey's appeal, finding that its search was adequate. (Doc. No. 44, Second Declaration of Alex P. Hontos ("Second Hontos Decl.") ¶ 2, Ex. 47 at 5.) The USPS further found that its "interpretation of the request for purposes of the initial response is reasonable" because "the requester's request concerns documents related to the criteria for awarding NSAs, not the procedures followed for entering into such agreements or the process of negotiating NSAs." (*Id.* at 6.) Finally, the USPS found that the procedures described in the USPS Domestic Mail Manual were "outdated" and therefore not "responsive to the request." (*Id.* at 6.)

5

## II. Analysis

### A. The Freedom of Information Act

The purpose of the FOIA is to provide wide-ranging public access to government documents. *See Miller v. U.S. Dep't of Agric.*, 13 F.3d 260, 262 (8th Cir. 1993). "Congress intended FOIA to permit access to official information long shielded unnecessarily from public view." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). "FOIA thus mandates that an agency disclose records on request, unless they fall within one of nine exemptions. These exemptions are explicitly made exclusive and must be narrowly construed." *Hulstein v. Drug Enf't Admin.*, 671 F.3d 690, 694 (8th Cir. 2012). The PRA makes clear that the USPS is subject to FOIA. *See* 39 U.S.C. § 410(b)(1).

### B. Standard of Review and Summary Judgment in a FOIA Case

The FOIA provides for *de novo* review by a district court of an agency decision to withhold requested information and places the burden on the agency to demonstrate that a claimed exemption applies. *See* 5 U.S.C. § 552(a)(4)(B); *see also Argus Leader Media v. U.S. Dep't of Agric.*, 740 F.3d 1172, 1175 (8th Cir. 2014); *Ameren Missouri v. U.S. EPA*, 897 F. Supp. 2d 802, 808 (E.D. Mo. 2012).[4] "[S]ummary judgment is available to a

---

[4] The USPS argues that this matter is subject to "limited de novo review." *See Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1147 (8th Cir. 2011) (stating that "the statutory de novo standard has been modified in FOIA exemption 3 cases. In such cases, a district court reviews de novo whether the statute qualifies for FOIA exemption 3 and whether the requested information at least arguably falls within the ambit of the withholding statute"). In *Argus Leader*, decided after *Cent. Platte*, the Eighth Circuit applied *de novo* review, not "limited de novo review." In any event, this Court does not consider the difference between the two standards, whatever that difference may be, to be outcome determinative.

defendant agency where 'the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Missouri Coalition for Env't Found. v. U.S. Army Corps. of Eng'rs*, 542 F.3d 1204, 1209 (8th Cir. 2008) (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985)). The district court must evaluate the record, including pleadings, affidavits, or declarations on file, in the light most favorable to the nonmoving party to determine whether "there is no genuine dispute as to any material fact and the movant party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Missouri Coalition*, 542 F.3d at 1209.

Once the moving party has met its burden, the non-moving party may not rest on the allegations of the pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See Ameren Missouri*, 897 F. Supp. 2d at 808 (citing *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012)). A court's "primary role" in considering a motion for summary judgment under the FOIA is to

> review the adequacy of the affidavits and other evidence presented by the Government in support of its position . . . . If the Government fairly describes the content of the material withheld and adequately states its grounds for non-disclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position.

*Barney v. IRS*, 618 F.3d 1268, 1272 (8th Cir. 1980).

7

### C. The USPS's *Glomar* Response

Generally, an agency responding to a FOIA request "must acknowledge the existence of information responsive to [that] request and provide specific, non-conclusory justifications for withholding that information" under one of FOIA's exemptions. *Western Values Project v. U.S. Dep't of Justice*, 317 F. Supp. 3d 427, 433 (D.D.C. 2018) (quoting *Roth v. DOJ*, 642 F.3d 1161, 1178 (D.C. Cir. 2011)). "In the *Glomar* context, the 'specific information' at issue is not the contents of a particular record, but rather the 'existence *vel non*' of any records responsive to the FOIA request." *ACLU*, 710 F.3d at 427 (quoting *Wolf v. CIA*, 473 F.3d 370, 379 (D.C. Cir. 2007)). An agency may issue a *Glomar* response only if "'the fact of the existence or nonexistence of agency records falls within a FOIA exemption.'" *Western Values*, 317 F. Supp. 3d at 433 (quoting *Wolf*, 473 F.3d at 374).

In the namesake case, the CIA maintained that the existence of records regarding the recovery of a Soviet submarine with a research vessel owned by Howard Hughes—the *Glomar* Explorer—was exempt from disclosure under an exception for matters relating to national security. *See Phillippi v. CIA*, 546 F.2d 1009, 1012–15 (D.C. Cir. 1976). *Glomar* responses are primarily used and upheld in the context of national security or acute privacy interests. *See, e.g.*, *Freedom Watch, Inc. v. Nat'l Sec. Agency*, 783 F.3d 1340, 1342 (D.C. Cir. 2015) (upholding *Glomar* response to FOIA request for documents relating to information on classified program to undermine Iran's nuclear program); *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 64–65 (2d Cir. 2009) (upholding *Glomar* response to FOIA request for information gathered under the Terrorist Surveillance

Program relating to terrorists detained at Guantanamo Bay); *Wolf*, 473 F.3d at 372–73 (upholding *Glomar* response to FOIA request for records concerning a former Colombian presidential candidate who was assassinated); *PETA v. NIH*, 745 F.3d 535, 541–42 (D.C. Cir. 2014) (upholding *Glomar* response to FOIA request by People for the Ethical Treatment of Animals for information on whether researchers were subject to animal abuse investigation).

Here, the USPS alleges that withholding the mere fact of the existence or non-existence of documents responsive to Dorsey's FOIA requests to the Postal Service is justified under Exemption 3 and Section 410(c)(2) of the PRA. Exemption 3 permits an agency to withhold information "specifically exempted from disclosure by statute" if that statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Section 410(c)(2) of the PRA permits the USPS to withhold "information of a commercial nature, including trade secrets, whether or not obtained from a person outside the Postal Service, which under good business practice would not be publicly disclosed." 39 U.S.C. § 410(c)(2). This provision is "commonly known as the 'good business exception,' enacted because Congress intended the Postal Service to 'operate more like a private business than a governmental agency.'" *Reid v. U.S. Postal Serv.*, Case No. 05-cv-294-DRH, 2006 WL 1876682, at *5 (S.D. Ill. July 5, 2006) (quoting *Wickwire Gavin, P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 592 (4th Cir. 2004)). "This provision comports with Congress's overall purposes in passing the Postal Reorganization Act, which include assuring that

9

USPS 'be run more like a business than had its predecessor, the Post Office Department.'" *Wickwire Gavin*, 356 F.3d at 590 (quoting *Franchise Tax Bd. of Cal. v. U.S. Postal Serv.*, 467 U.S. 512, 520 (1984)). At the same time, the PRA still requires the Postal Service to be "operated as a basic and fundamental service provided to the people by the Government of the United States," with "different goals, obligations, and powers than private corporations." *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1128 (9th Cir. 2007).[5] The Eighth Circuit has yet to address *Glomar* or the interplay between Exemption 3 and Section 410(c)(2) to determine whether the information withheld is the type that is not disclosed under good business practices.

The USPS argues that the mere disclosure of the fact or existence of information relating to NSAs with Fujian Zongteng Network Technology Co., Limited, Enumber, Inc., and US Elogistics Service Corporation is information of a commercial nature,[6] which under good business practice would not be publicly disclosed. (Doc. No. 40,

---

[5] This Court recognizes that facially there would appear to be some tension between the PRA and the FOIA. In "creating the United States Postal Service, the Congress intended that it should operate more like a private business than a governmental agency." *Nat'l Western Life Ins. Co. v. United States*, 512 F. Supp. 454, 462 (N.D. Tex. 1980). But the Postal Service "is still subject to public responsibility, as evidenced by the applicability to the Postal Service of the Freedom of Information Act." *Id.*

[6] The parties do not dispute that the content of documents at issue—if they exist—might include information of a commercial nature. *See* 39 C.F.R. § 265.14(b)(3) ("Information is of a commercial nature if it relates to commerce, trade, profit, or the Postal Service's ability to conduct itself in a businesslike manner."). However, it is not clear that the parties agree that the mere disclosure of the existence or non-existence of responsive documents might disclose information of a commercial nature. For purposes of these motions, this Court will assume that the disclosure of the existence of documents is information of a commercial nature.

USPS's Response Mem. 1–2.) The USPS cites no circumstance invoking *Glomar* in this context, and no court to date has considered the applicability of *Glomar* to effectuate the statutory exemption in Section 410(c)(2). (*See* Doc. No. 32, USPS's Mem. 10.)[7] All of the USPS cases cited by the parties invoking Section 410(c)(2) involve the disclosure of documents after responsive documents or the content within a document have been identified and withheld. *See, e.g.*, *Carlson*, 504 F.3d 1123; *Wickwire*, 356 F.3d 588; *Braun v. U.S. Postal Serv.*, 317 F. Supp. 3d 540 (D.D.C. 2018); *Moore v. U.S. Postal Serv.*, 5:17-CV-00773 (MAD/TWD), 2018 WL 4903230 (N.D.N.Y. Oct. 9, 2018);[8] *Carlson v. U.S. Postal Serv.*, Case No. 13-cv-06017-JSC, 2015 WL 9258072 (N.D. Cal. Dec. 18, 2015); *Fair Political Practices Comm'n v. U.S. Postal Serv.*, No. 2:12-cv-00093-GEB-CKD, 2012 WL 4953184 (E.D. Cal. Oct. 16, 2012); *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 742 F. Supp. 2d 76 (D.D.C. 2010); *Reid v. U.S. Postal Serv.*, Case No. 05-cv-294-DRH, 2006 WL 1876682 (S.D. Ill. July 5, 2006); *Airline Pilots Ass'n Int'l v. U.S. Postal Serv.*, Civil Action No. 03-2384 (ESH), 2004 WL 5050900 (D.D.C. June 24, 2004). Thus, the assertion of *Glomar* to withhold the fact of the mere existence or non-existence of USPS documents pursuant to Section 410(c)(2) appears to be a case of first impression.

---

[7] The absence of authority, standing alone, does not "doom" USPS's argument, *see Western Values*, 317 F. Supp. 3d at 433, but it is "striking," *id.*, especially given the existence of numerous FOIA cases where the USPS did not invoke *Glomar*.

[8] The USPS argues that *Moore* supports its position, citing a declaration from a records management officer docketed in that case discussing *Glomar* in relation to fit-for-duty examinations of postal workers. (USPS's Mem. 11.) The court in *Moore* did not discuss *Glomar* and the USPS was not granted summary judgment on that basis.

11

A *Glomar* response is justified when "merely acknowledging the existence of responsive records" would itself cause harm cognizable under the FOIA exception. *PETA*, 745 F.3d at 540. In support of its *Glomar* argument that disclosing the existence or nonexistence of documents is exempted by Section 410(c)(2), the USPS provides two declarations from Dennis Nicoski, Senior Vice President, Sales and Customer Relations for the USPS since March of 2018, and Director, Field Sales Strategy and Contracts since 2009. (First Nicoski Decl. ¶ 2; *see also* Doc. No. 41, Second Declaration of Dennis Nicoski ("Second Nicoski Decl.").) Nicoski states that "every customer has a mutually signed [non-disclosure agreement]. Revealing to anyone that a customer has an NSA with the Postal Service could potentially harm the company because the company would not want their other carriers, or competitors, to know that they had an agreement with the Postal Service." (Nicoski Decl. ¶ 12.) Nicoski further states that "knowledge of an NSA could potentially cause similar companies, paying published prices, to seek lower prices through an NSA, thus damaging the Postal Service by reducing revenue," and disclosure "provides intelligence to other companies, including our competitors, about the Postal Service's products and services being used." (*Id.* ¶¶ 13–14.)

As set forth above, the standard adopted by other courts allows Dorsey to challenge the USPS's "assertion that confirming or denying the existence of any records would result in a cognizable harm under a FOIA exemption." *Agility Public Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 326 (D.D.C. 2015). In this Court's view, USPS's general statements about *potential* harm are insufficient to demonstrate that the disclosure *would cause* harm cognizable under the FOIA exemption. *ACLU*, 710 F.3d

12

at 426 ("Because *Glomar* responses are an exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information, they are permitted only when confirming or denying the existence of records would itself cause harm cognizable under an FOIA exception"); *PETA*, 745 F.3d at 540 ("In certain cases, merely acknowledging the existence of responsive records would itself 'cause harm cognizable under a FOIA exception.'") (quoting *Wolf*, 473 F.3d at 374).[9]

Moreover, even if a showing of harm is not required or if the USPS's comments about potential harm could be considered adequate, courts have interpreted Section 410(c)(2) to require the USPS to provide evidence that other private businesses would not disclose the requested information. *See Carlson*, 2015 WL 9258072, at *7 ("In *Wickwire Gavin*, the Fourth Circuit noted that 'it is uncontroverted that the statutory term 'good business practice' should be decided with reference to what businesses normally do.' District courts across the country have taken a similar approach, looking to 'the common practices of other business' to determine what constitutes 'good business practice.'") (internal citations omitted). "[A] determination of whether the disclosure of particular information would be a 'good business practice' does not rest on a conclusion of

---

[9] This standard suggests that *Glomar* may be inapplicable in Section 410(c)(2) cases because courts have not required the Government to establish harm in order to apply the statute in the non-*Glomar* context. *See Carlson*, 2015 WL 9258072, at *8 ("Notably, there is no requirement that the agency establish that disclosure of the information would result in competitive harm.") (citing *Wickwire Gavin*, 356 F.3d at 594). As previously discussed, the harm in a typical *Glomar* case relates to national security or individual privacy rights.

13

competitive disadvantage to the Postal Service; instead, courts look to the common business practices of other businesses." *Am. Postal Workers Union*, 742 F. Supp. 2d at 82. The "contours of the good business practice exemption are to be gleaned by looking to the commercial world, management techniques, and business law, as well as to the standards of practice adhered to by large corporations." *Airline Pilots Ass'n*, 2004 WL 5050900, at *6 (quoting *Wickwire Gavin*, 356 F.3d at 592).

Under this standard, the USPS bears the initial burden of showing that "other businesses do not disclose the type of information requested." *Carlson*, 2015 WL 9258072, at *8. The USPS's own analysis, even if sufficient to meet its initial burden to support the exemption, does not end this Court's inquiry.

> Once the agency establishes that other businesses do not disclose the type of information requested, courts consider whether the plaintiff has submitted contrary evidence. Put another way, in the face of the agency's assertion that other businesses do *not* disclose the type of information at issue, the burden shifts to the plaintiff to offer evidence that businesses *do* disclose such information.

*Id.* (emphasis in original). Dorsey has rebutted the USPS's Declarations with evidence that similarly situated private businesses such as Federal Express and United Parcel Service regularly disclose the identities of their business partners. (*See, e.g.*, Hontos Decl., Ex. 33 (FedEx Agreement with MyLocker.net); Ex. 34 (FedEx Agreement with eBay); Ex. 38 (UPS Agreement with Sealed Air Corporation); Ex. 43 (UPS Agreement with NASCAR).)[10]

---

[10] The evidence also shows that the USPS regularly discloses this type of information. (Hontos Decl., Ex. 13 (USPS Agreement with Shutterfly); Ex. 14 (USPS
(Footnote Continued on Next Page)

In its Response and Reply, the USPS contends that Dorsey's rebuttal evidence is "not material to the question presented here." (Doc. No. 40, USPS's Response and Reply 11.) This Court disagrees. The evidence put forward by Dorsey directly counters the USPS's position regarding disclosure of NSAs in the First Nicoski Declaration. Contrary to the First Nicoski Declaration, the USPS now appears to agree that the USPS "does not categorically refuse to disclose NSAs." (USPS's Response and Reply 10.) Instead, the USPS now asserts that occasional disclosure of NSAs does not result in a waiver of the USPS's ability to assert a *Glomar* response to requests for documents related to other NSA information, and NSAs disclosed by the USPS in the past are "Market-Dominant" and not "Competitive." (*Id.* at 11–17.)[11]

---

(Footnote Continued From Previous Page)
Agreement with United Health Group).) The First Nicoski Declaration touts the USPS's relationships with Citi, State Farm, Target, Walmart, Kohl's, and Best Buy. (First Nicoski Decl. ¶ 3.)

[11]    After taking the general position that "[r]evealing to anyone that a customer has an NSA with the Postal Service could potentially harm the company because the company would not want their other carriers, or competitors, to know that they had an agreement with the Postal Service," (First Nicoski Decl. ¶ 12), the USPS attempts to distinguish its NSAs between Market Dominant NSAs, where "it is not necessary to protect the names of the parties to such agreements," (Second Nicoski Decl. ¶ 9), and Competitive NSAs, where "it is necessary to protect the identity of those business partners, so that the Postal Service is not placed at a competitive disadvantage." (Second Nicoski Decl. ¶ 10.) Even if this general information could establish harm or general business practices, Nicoski fails to connect the requested information with a Competitive NSA.

First, as to waiver,[12] Dorsey has not claimed that the USPS disclosed the existence of the requested documents, thus waiving this issue altogether. Instead, Dorsey asserts that the USPS's conduct in disclosing many other NSAs is inconsistent with its *Glomar* response, which claims that disclosing the existence or non-existence of documents would be potentially harmful. Second, the USPS's efforts in the Second Nicoski Declaration to parse the type of NSAs at issue are not persuasive. Even if the Second Nicoski Declaration is accepted,[13] the USPS did not sufficiently explain or distinguish the categories of NSAs that apply to Dorsey's specific requests in order to justify its *Glomar* response. Dorsey, unlike the USPS, presented evidence related to the practice of private

---

[12]    The case cited by the USPS in support of its waiver argument, *Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007), presents an entirely different situation. In *Wolf*, a FOIA request was presented to the CIA seeking all records relating to a former Colombian politician who had been assassinated in Bogota, Colombia. After his assassination, riots erupted in Bogota, prompting a Congressional investigation into the alleged failure of the CIA to predict the unrest. 473 F.3d at 373. The circumstances of *Wolf*—in addition to cases cited therein—also underscore the unusual assertion of *Glomar* in this case. *See, e.g.*, *Public Citizen v. Dep't of State*, 11 F.3d 198 (D.C. Cir. 1993) (seeking disclosure of information pertaining to meeting between former Ambassador to Iraq and Iraqi President one week before Iraq invaded Kuwait and precipitated the Persian Gulf war); *Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990) (seeking documents relating to disappearance of Basque exile last seen in New York City).

[13]    Dorsey argues that the Court should "disregard" the Second Nicoski Declaration "as an untimely end-run around the Court-ordered (and stipulated) deadlines entered in this case" because it "contains no content that could not have been included in the First Declaration." (Doc. No. 43, Dorsey's Reply 9 n.6.) Dorsey's Complaint put the USPS on notice that it would need to address evidence pertaining to its disclosure of NSAs. (*See* Compl. ¶ 7 ("Even the USPS commonly touts in press releases and on its website the names of its private commercial partners, including holders of NSAs.").) Therefore, the Court would have adequate grounds to strike the Second Nicoski Declaration. Even considering the Second Nicoski Declaration, the USPS's *Glomar* response is not justified.

business, such as Federal Express and UPS. This evidence is not rebutted by the USPS Response and Reply. The correct analytical focus to determine whether withheld information falls under Section 410(c)(2) is the practice of private businesses, not the government agency's choice, for whatever reason, to keep specific information from the public. *See Carlson*, 2015 WL 9258072, at *8. Thus, Dorsey has submitted contrary evidence about other businesses that is sufficient to establish that the USPS's *Glomar* response is not justified. *See Airline Pilots Ass'n*, 2004 WL 5050900, at *8.[14]

### D. Conclusion

The USPS failed to meet its burden of demonstrating that its *Glomar* response is justified. Dorsey should therefore be granted summary judgment as to the *Glomar* response issued by the USPS.[15] The USPS should be required to disclose the existence or non-existence of documents. Typically, the next steps would include the search for responsive documents and the production of a *Vaughn* index. Nothing in this Report and

---

[14] Many of the USPS's assertions reach beyond the *Glomar* analysis to argue that the content of the documents are exempted from disclosure. (*See* USPS's Response and Reply 8 ("Disclosure of these agreements, if any, would reveal the identity of entities that are parties to contracts by which the Postal Service *may offer favorable pricing and terms*.") (emphasis added); *Id.* 10 ("*Sensitive commercial information within those documents*, including the parties to the agreements, is properly withheld.") (emphasis added).) Arguments relating to the content of the documents—if they exist—are not yet before the Court.

[15] As noted above, the USPS withdrew its *Glomar* response with respect to NSA guidance materials. Because the pending summary-judgment motions are related only to the validity of the USPS's *Glomar* response, neither party should be granted summary judgment as to the guidance materials. The parties should also discuss next steps related to the guidance materials.

Recommendation is intended to preclude the USPS from arguing that certain documents or portions of documents (if they exist) are exempted from disclosure.[16] Again, this Report and Recommendation only addresses whether the USPS's *Glomar* response is justified. This Court concludes that *Glomar* should not extend to these circumstances.

### III. Recommendation

For the reasons set forth above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The USPS's Motion for Summary Judgment (Doc. No. 30) be **DENIED**; and

2. Dorsey's Motion for Summary Judgment (Doc. No. 35) be **GRANTED** as to the *Glomar* response issued by the USPS.

Date: May 9, 2019                                  *s/Becky R. Thorson*_____
                                                   BECKY R. THORSON
                                                   United States Magistrate Judge.

**NOTICE**

---

[16] *See, e.g.*, *Western Values*, 317 F. Supp. 3d at 436 ("In short, the Department has not shown that the very fact of these records' existence is privileged so as to fall within Exemption 5. The Department was therefore not permitted to issue a *Glomar* response to Western Values' requests. As a result, the Court will require the Department to submit 'a *Vaughn* index or other description of the kind of documents the agency possesses'—if any—that are responsive to Western Values' requests. The Court need not resolve at this juncture the level of detail necessary to comply with FOIA—or, put differently, how much information about any responsive documents may be properly withheld pursuant to Exemption 5.") (internal citation omitted).

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).